IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

SALLY PRIESTER,

Plaintiff,

v.

PUERTO RICO DEPARTMENT OF
HEALTH AND VICTOR RAMOS,

Defendants.

CIV. NO. 22-1035 (SCC)

**OMNIBUS OPINION AND ORDER**

Pending before the Court are motions to dismiss filed by the Puerto Rico Department of Health ("PRDH"), *see* Docket No. 88 and Dr. Victor Ramos ("Dr. Ramos"), *see* Docket No. 91, in addition to a Motion for Preliminary Injunction filed by Dr. Sally Priester ("Dr. Priester"), *see* Docket No. 4. For the reasons set forth below, the Court: (1) **GRANTS** the PRDH's Motion to Dismiss; (2) deems as **MOOT** Dr. Priester's request for a preliminary injunction; (3) and **STAYS** the claim against Dr. Ramos.

## I.   BACKGROUND

On April 14, 2021, the Puerto Rico Medical Licensing and Disciplinary Board (the "Board"),[1] issued Resolution and Order 2021-04. Docket No. 1 at pg. 26. The same was issued after the Board investigated certain comments made by Dr. Priester during the month of November 2020, regarding the Government of Puerto Rico's response to the Covid-19 pandemic. In the Resolution, the Board informed Dr. Priester that it would be filing a Formal Complaint against her because her comments violated canons 29, 31, 32, 33 and 38 of the Code of Ethics of the Medical Profession (the "Code of Ethics"). Further, because the evidence identified during the investigative phase "supports the likelihood of Unprofessional Conduct," and considering the danger that straying from guidelines necessary to address the Covid-19 pandemic presented, the Board issued a cease-and-desist

---

[1] The Board is attached to the PRDH. *See* P.R. LAWS ANN. tit. 20, § 132.

order prohibiting Dr. Priester from speaking out against the efforts of the Government of Puerto Rico and other private entities to address the Covid-19 pandemic without any scientific basis to do so.

Dr. Priester has filed this suit against the PRDH and Dr. Ramos pursuant to 42 U.S.C. § 1983. *See* Docket No. 84.[2] Specifically, she seeks injunctive relief against the PRDH so that it does not enforce the cease-and-desist order and does not impose any disciplinary measures or monetary sanctions for her expressions regarding the handling of the Covid-19 pandemic by the Government of Puerto Rico or private entities. She also seeks declaratory relief for the cease-and-desist order to be declared invalid and monetary damages against Dr. Ramos, in his individual capacity, because he purportedly engaged in a conspiracy that resulted in the deprivation of her First Amendment rights.

---

[2] Throughout this Opinion and Order, the Court will refer to the Amended Complaint at Docket No. 84 since that is the operative complaint in this case. The original complaint can be found at Docket No. 1.

## II.  PRDH's Motion to Dismiss

The PRDH has moved for dismissal on three fronts. First, it argues that the Court should abstain from entertaining Dr. Priester's claims under *Younger v. Harris*, 401 U.S. 37 (1971). Second, it contends that *res judicata* bars Dr. Priester's claims in view of certain judgments issued by the Puerto Rico state courts that pertain to the administrative proceedings launched by the Board. Lastly, it argues that the *Rooker-Feldman* doctrine strips this Court from its subject-matter jurisdiction and therefore precludes it from hearing this case. The Court begins its analysis by considering whether the *Younger* doctrine is at play here.

### a.  *Younger* **Abstention**

The *Younger* doctrine "cautions that federal courts should generally refrain from enjoining pending state court proceedings." *Marshall v. Bristol Sup. Ct.*, 753 F.3d 10, 17 (1st Cir. 2014). The First Circuit has noted that, "[l]ike exhaustion, '*Younger* is not a jurisdictional bar based on Article III

requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity.'" *Id.* (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)); *see also Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 (1st Cir. 2012) (explaining that "*Younger* rests upon basic notions of federalism and comity, and also on a related desire to prevent unnecessary duplication of legal proceedings."). To determine whether abstention under *Younger* is warranted, the First Circuit applies a three-part test. First, the Court must determine whether the administrative proceeding at issue here triggers *Younger*. This is so because the Supreme Court has "held that only three types of state proceedings trigger *Younger* abstention: (i) criminal prosecutions, (ii) 'civil proceedings that are akin to criminal prosecutions,' and (iii) proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015) (quoting *Sprint*

*Commc'ns., Inc. v. Jacobs,* 571 U.S. 69, 72-73 (2013)).

Second, the Court must consider whether the relief requested by the movant—Dr. Priester, in this case—"would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance [her] federal constitutional challenge." *Rossi v. Gemma,* 489 F.3d 26, 34-35 (1st Cir. 2007). These three factors stem from the Supreme Court's decision in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982), and are referred to as the *Middlesex* factors. Third, the Court must examine whether any of the exceptions to *Younger* apply.

As far as the first part of the test is concerned, the *Younger* doctrine has been extended to "coercive civil cases involving the state and comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests." *Maymó-Meléndez v. Álvarez-Ramírez,* 364 F.3d 27, 31 (1st Cir. 2004). Here, Dr. Priester does not dispute that

the *Younger* doctrine applies to administrative proceedings such as the one being carried out by the Board.[3] She does, however, reject the PRDH's assertion that the *Middlesex* factors are satisfied in this case. The Court will therefore consider each factor in turn. Then, it will analyze whether any of the exceptions to *Younger* apply.

### i. Ongoing Proceedings

According to Dr. Priester, because the cease-and-desist order went into effect once she received it, that order is final and complete. To that end, she reasons that there are no ongoing administrative proceedings before the Board, as far as the cease-and-desist order is concerned and even if she

---

[3] Further, the Court notes that the administrative proceedings scheme before the Board mirror those in *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015), where the First Circuit found administrative proceedings to fall under the *Younger* "taxonomy." There, the administrative proceedings were deemed to be "ongoing" and "judicial in nature" since the state entity "completed an investigation, issued a formal complaint, conducted a pre-hearing conference, and scheduled an adjudicative hearing." *Id.* at 196. The administrative proceedings outlined in the Board's Regulation 8861 (the "Regulation") track this scheme.

were to seek review of what she has deemed a final order, those proceedings would be remedial and not coercive. Therefore, she contends, *Younger* abstention is inapplicable. She relies on the First Circuit's decision in *Kercado-Meléndez v. Aponte-Roque,* 829 F.2d 255 (1st Cir. 1987), in support of this proposition. But as the Court's discussion will show, *Kercado-Meléndez* can be distinguished from the facts presented in the instant case.

Chapter 10 of the "General Regulation of the Board," Regulation No. 8861 of November 30, 2016 (the "Regulation") lays out the administrative proceedings that can be initiated by the Board in view of any alleged violation to the Board's enabling act, to wit, Law No. 139 of August 1, 2008, as amended, *see* P.R. LAWS ANN. tit. 20, § 131 *et seq*. ("Law 139"), or the Regulation. According to the provisions found in Chapter 10, the Board's administrative proceedings may

entail two phases.[4] The first phase is the Investigative Phase.
*See* Articles 10.7 – 10.9 of the Regulation. Upon the conclusion
of that phase, the Board issues an Initial Determination
whereby it sets the procedural course of the proceedings,
imposes any necessary provisional remedies and/or may state
that it will be filing a Formal Complaint against the doctor
that is facing the administrative proceeding. *See* Article 10.10
of the Regulation. If a Formal Complaint is filed, the second
phase begins and that phase entails a Formal Hearing.[5] *See*
Article 10.11 of the Regulation. Upon the conclusion of the

---

[4] The Regulation provides for the possibility that the Investigative Phase
need not take place. *See* Article 10.10 of the Regulation. But because one
did take place in the administrative proceedings at issue here, the Court
has acknowledged that process.

[5] The Regulation states that an Examining Officer may preside over the
Formal Hearing and render a report with determinations of fact,
conclusions of law and any other recommendations. If an Examining
Officer is designated, the Regulation gives that individual ample powers
when presiding over the Formal Hearing. *See* Article 10.11 of the
Regulation, providing a non-exhaustive list of the Examining Officer's
powers.

Formal Hearing, the Board renders a final determination. *See*
Article 10.12 of the Regulation.

Having generally recapitulated the Board's administrative
proceedings scheme, given the procedural juncture during
which the cease-and-desist order was issued, it cannot be said
that the same was a final order. The administrative
proceeding delineated in the Regulation is subject to the
Puerto Rico Uniform Administrative Procedure Act, Law No.
38 of June 30, 2017, P.R. LAWS ANN. tit 3, § 9601 *et seq.* ("LPAU"
for its Spanish acronym). The Puerto Rico Supreme Court has
"repeatedly held that [pursuant to the LPAU, final orders and
resolutions] 'refer to the decisions that put an end to the case
before the agency and that have substantial effects on the
parties.'" *P.R. Tel. Co. v. San Juan Cable, LLC,* 179 D.P.R. 177
(P.R. 2010)(citations omitted). And it is only the orders and
resolutions "that put an end to an administrative proceeding
[that] may be judicially reviewed." *Id.* This follows that
because here the cease-and-desist order did not put an end to

the administrative proceedings, the same is not a final order under the LPAU's statutory scheme and judicial review of that order is not available to Dr. Priester at this time.

As noted above, the cease-and-desist order was issued jointly with the Board's Resolution stating that it would be filing a Formal Complaint in view of Dr. Priester's alleged violations to the Code of Ethics. Docket No. 1 at pgs. 26-31. The issuance of the cease-and-desist order was predicated on the Board's understanding "that there is evidence that supports the likelihood of Unprofessional Conduct." Docket No. 1 at pg. 28. Moreover, it states that "it will remain in force until otherwise determined by the Board." *See* Docket No. 1 at pg. 29.  This leads the Court to hold that the cease-and-desist order was issued as a provisional remedy—something that the Regulation allows the Board to implement—and not a final order which could be eligible for judicial review by the Puerto Rico Court of Appeals, should Dr. Priester have

chosen to avail herself of that remedy.[6] And this is precisely one of the elements that distinguishes the instant case from the decision in *Kercado-Meléndez*. The termination order in *Kercado-Meléndez* could have been a candidate for judicial review, should the plaintiff in that case have chosen to avail herself of that remedy. The plaintiff in *Kercado-Meléndez*, opted to forego that option and instead filed suit in federal court.

Furthermore, because the cease-and-desist order is a provisional remedy, that is very much a part of the ongoing administrative proceedings, the Court can apply the principles regarding ongoing orders in civil cases and the role that they play as part of the "fundamental workings of a state's judicial system," *see Rio Grande Cmty. Health Ctr. Inc. v. Rullán,* 397 F.3d 56, 69 (1st Cir. 2005). For here, the Regulation explicitly provides that as part of the Initial Determination,

---

[6] Whether the cease-and-desist order becomes a final order once the Board issues its Final Determination would be a separate issue that is not currently before this Court's consideration.

the Board may issue provisional remedies, and nothing in the Regulation or Law 139 precludes the use of a cease-and-desist order as one of the tools in the Board's arsenal to provisionally safeguard the ongoing administrative proceedings and ensure compliance with the Code of Ethics.[7] *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (discussing how a state issued contempt order "vindicates the regular operation of its judicial system[.]"). This logic follows that the ongoing cease-and-desist order serves as a provisional mechanism to maintain the *status quo* and to prevent violations to the Code of Ethics until the Board renders a final determination

---

[7] In her Surreply, Dr. Priester states that Law 139 limits the Board's ability to issue cease-and-desist orders only to when a violation of that law has occurred. *See* Docket No. 105 at pg. 4. However, Dr. Priester overlooks the fact that Law 139 is to be read in tandem with the Regulation. And as discussed, the Regulation states that as part of its Initial Determinations, the Board may issue provisional remedies or any other determinations it deems appropriate and that the Board is tasked with enforcing the Code of Ethics. *See* Article 10.10 of the Regulation and P.R. LAWS ANN. tit. 20, § 132e(aa).

regarding Dr. Priester's purported unprofessional conduct in contravention of the abovementioned canons.

In view of the ongoing nature of the cease-and-desist order, if the Court were to enjoin the enforcement of the same, it would interfere with the ongoing administrative proceeding before the Board. Interference with an ongoing proceeding is a threshold issue when discussing the applicability of *Younger* abstention. *See Rossi,* 489 F.3d at 35, 37. And the First Circuit has stated that, "[i]nterference is . . . usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so." *Rio Grande Cmty. Health Ctr. Inc.,* 397 F.3d at 70. If the Court were to meddle with the cease-and-desist order, such action would have the "practical effect" of interfering with the ongoing administrative proceedings started by the Board against Dr. Priester.

Further, "[t]o satisfy the [ongoing proceedings prong] in the context of a state administrative proceeding, the

proceeding 'must be coercive and in most-cases, state-initiated, in order to warrant abstention.'" *Casiano-Montañez v. State Ins. Fund Corp.*, 707 F.3d 124, 128 (1st Cir. 2013) (quoting *Guillemard-Ginorio v. Contreras-Gómez*, 585 F.3d 508, 522 (1st Cir. 2009)). The Court finds that this requirement is met since the disciplinary administrative proceedings were started by the Board and they are in fact coercive in nature.

In view of this analysis, the Court determines that the cease-and-desist order is not a final order and is part of the Board's ongoing disciplinary administrative proceedings. The first *Middlesex* factor is met here.

### ii.  Important State Interest

Law 139 states that the Board is authorized to amend, reject or approve the Code of Ethics. P.R. LAWS ANN. tit. 20, § 132a(j); *see, also id.* § 132b (stating that the Board will have 180 days to develop and approve the Code of Ethics). By the same token, it is called upon to apply the Code of Ethics. *Id.* at § 132e(aa).  Further,  the  Board  may  investigate  and

subsequently discipline any licensed doctor who has incurred in "non-professional conduct." *Id.* at §§ 135b(e) and 134(e)(14). Law 139 defines "non-professional conduct" as, *inter alia,* violating the laws and regulations that were approved by the Board by virtue of Law 139. *Id.* at § 134(f). More fundamentally, a complete reading of Law 139 confirms that it is intended to regulate and ensure that all licensed doctors are competent in both the technical aspect required to practice medicine and the ethical norms that govern the medical profession.

As described above, Law 139 and the Regulation vest the Board with the authority to, as part of its regulatory powers, discipline licensed doctors who have committed ethical violations. Because the cease-and-desist order is ongoing and directly tied to the Board's administrative inquiry as to whether one of its licensed doctors, to wit, Dr. Priester violated the Code of Ethics, the Court finds that whether a licensed doctor complied with his or her ethical duties, and

any provisional remedy that may have been implemented to prevent violations, constitutes an important state interest.

### iii. Opportunity to Advance Federal Constitutional Challenge

The question that the Court must answer here is whether plaintiff has or has had "an opportunity to present [her] federal claims," in the ongoing administrative proceedings, for "no more is required" to satisfy this third prong. *See Juidice*, 430 U.S. at 337. In *Sirva Relocation, LLC*, 794 F.3d at 196, the First Circuit stated that this third prong "is generally deemed satisfied as long as no state procedural rule bars the assertion of a federal defense and the state affords a fair opportunity to raise that defense." But while it stated that extreme agency delay could justify federal-court intervention, it added, however, that "a federal plaintiff's failure to pursue potentially available state judicial remedies undermines that plaintiff's ability to demonstrate that it had no meaningful opportunity to asserts its federal defense." *Id.* Here, Dr. Priester has argued that the Board has dragged its feet when

it comes to adjudicating her case. *See* Docket No. 105. But she has not informed the Court, and the Court is not aware of, any attempts by her to question the validity of, modify or terminate, the ongoing cease-and-desist order within the ongoing administrative proceedings, or any prohibition that would preclude her from doing so. As such, the Court finds that the third and final *Middlesex* is satisfied.

### iv.   Exceptions to the *Younger* doctrine

Dr. Priester contends that, even if the *Middlesex* factors are met, because the cease-and-desist order and the administrative disciplinary proceedings launched by the Board were brought in bad faith by a biased Board, that should override the applicability of the abstention principles outlined in *Younger* to this case.  *See* Docket No. 92 at pgs. 9-13 and Docket No. 105.

Indeed, even after all three *Middlesex* factors are checked off, there are a host of exceptions that render abstention under *Younger* inapplicable. *See Esso Standard Oil Co. v. López-Freytes,*

522 F.3d 136, 143 (1st Cir. 2008) ("*Esso II*").  Such is the case
when (1) a state proceeding is launched with the intent to
"harass" and in "bad faith," (2) the *Gibson*[8] exception is
invoked to show extreme bias in the state proceedings, or (3)
a statute is blatantly unconstitutional. *Sirva Relocation, LLC,*
794 F.3d at 192. The First Circuit has noted that "the common
thread that links the various *Younger* exceptions is that, in
particular situations, closing the door of federal court to a
federal question will result in irreparable harm." *Id.* at 200.
But here, the Court is not persuaded by Dr. Priester's
argument that her case falls within one of these exceptions.

Regarding Dr. Priester's claims that the administrative
proceedings were initiated in bad faith to harass her, the
Court begins by noting that administrative proceedings were
launched by the Board in view of what it deems to be
purported violations to the Code of Ethics. There is nothing
in the Regulation or Law 139 that precludes the Board from

---

[8] Derived from *Gibson v. Berryhill,* 411 U.S. 564 (1973).

doing so. As fully discussed above, the cease-and-desist order
here is a provisional remedy that can be employed by the
Board and was issued bearing in mind the alleged violations
to the Code of Ethics. If anything, the practical effect of
contesting the ongoing cease-and-desist order, and the
ongoing administrative proceedings for that matter, *see*
Docket No. 92 at pg. 9, is that Dr. Priester is challenging the
reach and scope of the Code of Ethics. Interestingly, though,
neither the Amended Complaint nor her filings raise specific
challenges against the reach and scope of the Code of Ethics,
which purported violations prompted the Board to initiate the
ongoing administrative proceedings and issue the cease-and-
desist order.

Dr. Priester has also alleged that the administrative
proceedings were not properly brought against her because
Dr. Ramos did not comply with the Puerto Rico Medical
Physicians and Surgeons Association's ("Association")
procedure to refer her case to the Board.  However, a partial

judgment from the Puerto Rico Court of First Instance and a judgment from the Puerto Rico Court of Appeals affirming that partial judgment, state that the Board was within its right to begin the disciplinary administrative proceedings—which are still ongoing—that the Board could have begun the investigation into Dr. Priester's alleged ethical misconduct *sua sponte*, and, in any event, Dr. Priester's constitutional challenges regarding how the process began could be raised before the Board.[9] In short, the mere fact that the Board

---

[9] The Partial Judgment entered by the Puerto Rico Court of First Instance states that "regarding the validity of Dr. Ramos's referral and the ongoing administrative process, we believe that these can be resolved in the very proceedings before the [Board]. That is, Dr. Priester has a forum at her disposal where she can raise the claims or defenses that are available to her and obtain any remedies that may be legally in order." Docket No. 46-2 at pg. 14. It also states that "even if it were determined that [Dr. Ramos's referral] did not meet all the formalities that arise from the [Puerto Rico Medical Physicians and Surgeons Association's] organic act to be formally considered a referral from the College and even if it were determined that the College does not even have legal personality on the grounds set forth [by] the plaintiff, it is unquestionable that the [Board] has jurisdiction to begin an administrative investigation into matters related to the medical profession and the protection of health in Puerto Rico." *Id.* The Puerto Rico Court of Appeals affirmed this Partial Judgment and added that "it arises from the facts that it was [Dr. Ramos] who sent a letter to the Board so that

initiated the disciplinary administrative proceedings against
her, again, when it was well within its authority to do so, is
not enough to show that it did so in bad faith with the intent
to harass her.

       She also invokes the *Gibson* bias exception to *Younger* to
argue that there can be no guarantees that the Board will be
an impartial adjudicator because its members are biased. The
First Circuit discussed the *Gibson* bias exception at length in
both *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212 (1st Cir. 2004)
("*Esso I*"), and *Esso II.* However, here, the Amended
Complaint does not advance any allegations to the effect that
the Board, the Investigative Officer or the Examining Officer,
have a financial interest in the ongoing administrative

---

they would 'exercise *motu proprio* their power and duty to investigate and
take the disciplinary actions that were warranted against the physicians
who attempted against the public health by inciting the people to become
infected with COVID-19.'" Docket No. 46-4 at pg. 15. It added that "the
hearings before the Board have not been held and, in that sense, the
appellant has an adequate remedy at law for said forum to resolve her
claims appropriately." *Id.* at pg. 16.

proceedings, such that a showing of structural bias would be confirmed. Further, as far as the alleged expressions made by various Board members when deciding to issue the cease-and-desist order are concerned, the Court acknowledges that at first glance the statements attributed to certain Board members regarding Dr. Priester's First Amendment rights that were included in the Amended Complaint may be concerning. But ultimately, the ongoing cease-and-desist order was framed in such a way that it would only limit her speech to prevent Code of Ethics violations—not bar it altogether. The cease-and-desist order still allows her to talk about the ongoing Covid-19 pandemic. Having considered the allegations described in the Amended Complaint regarding the Board's purported bias, the Court does not find that they rise to the type of bias described in the *Esso* cases such that the *Gibson* bias exception would apply.

In this vein, it is also worth noting that the allegations of bias made throughout the Amended Complaint do not

mention how the second phase of the proceedings, which is currently underway, has been purportedly marred by any bias. This is important to highlight because this stage of the proceedings provides for the appointment of an Examining Officer. *See* Article 10.11 of the Regulation. That Examining Officer was not in the mix during the first phase of the proceedings. And the Examining Officer may, *inter alia*, preside over the Formal Hearing, review the evidence, and prepare a Final Report and Draft Final Resolution with conclusions of law and determinations of fact. *Id.* And as previously discussed, because the Regulation must comply with the LPAU, the Formal Hearing guarantees the following: (a) "the right to timely notice of the charges or complaints or claims against one of the parties," (b) "the right to introduce evidence," (c) "the right to an impartial adjudication," and (d) "the right to have the decision based on the record of the

case."  P.R. Laws Ann. tit. 3, § 2151.[10] Moreover, pursuant to the LPAU, the Formal Hearing will be taped or stenotyped. *Id.* at § 2163.[11] The parties will also be provided "the necessary time for a complete statement of all the facts and questions in dispute, the opportunity to answer, introduce evidence and argue, to cross-examine, and submit refuting evidence, except as it may be restricted or limited by the stipulations in the pre-hearing conference." *Id.*[12] The Court agrees that because Dr. Priester has not identified any type of bias or intent to harass in the second phase of the ongoing administrative proceedings and she will be afforded numerous procedural

---

[10] The Court notes that, P.R. Laws Ann. tit. 3, § 2151 was repealed by Law No. 38 of June 30, 2017, and replaced by P.R. Laws Ann. tit. 3, § 9641. The Court, however, has cited to the section previously in place since there is no English translation of the new section. Further, the Court notes that there are no substantive differences between § 2151 and § 9641.

[11] Tracks the contents of P.R. Laws Ann. tit. 3, § 9653.

[12] *Id.*

safeguards there, the Board is capable of remaining impartial and moving forward with the administrative proceedings.

Lastly, Dr. Priester argues that the cease-and-desist order has resulted in the loss of her First Amendment rights and that such loss constitutes an irreparable harm that has had a significant "chilling effect," for she has been unable to appear on various television and radio shows in view of the cease-and-desist order. But as the First Circuit has recognized, "[t]he *Younger* Court declared that "a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Brooks v. N.H. Sup. Ct.*, 80 F.3d 633, 641 (1st Cir. 1996) (quoting *Younger*, 401 U.S. at 51). The Court acknowledges Dr. Priester's reliance on the Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), regarding the implications of the loss of First Amendment rights. The Court does not turn a blind eye to the importance of those rights. However, that Supreme Court

decision was not made under the *Younger* rubric. Moreover, it is "only when it is crystal clear that the state tribunal either lacks the authority to proceed or can provide no meaningful relief can a party hope to demonstrate the degree of irreparable harm needed to justify federal-court intervention." *Sirva Relocation, LLC,* 794 F.3d at 200. Here, Dr. Priester has not made such a showing. Accordingly, the Court will abstain under *Younger* and DISMISS WITHOUT PREJUDICE the claims against the PRDH. The Court need not consider the PRDH's other grounds for dismissal.

### III. DR. RAMOS' MOTION TO DISMISS

Dr. Ramos has moved for dismissal on the grounds that Dr. Priester's claim against him is barred by *res judicata* and because she has failed to set forth a plausible § 1983 conspiracy claim for damages. Dr. Priester, in turn, alleges that Dr. Ramos and his co-conspirators entered into a conspiracy with the end goal of having the Board issue the cease-and-desist order and begin formal disciplinary

proceedings against her. She adds that the issuance of the cease-and-desist order resulted in the deprivation of her constitutional right to free speech.

Although Dr. Ramos did not move for dismissal based on *Younger*, the Court finds that abstention under *Younger* is also warranted here. Currently pending before the Board is a motion to dismiss which raises various constitution challenges regarding the ongoing administrative proceedings.[13] Moreover, as the Court already pointed out, the cease-and-desist order is not a final order, is still ongoing, and Dr. Priester has not shown that she is precluded from challenging the validity of the same in the administrative proceedings before the Board. Here, Dr. Priester's § 1983 damages claim directly hinges on the validity of the ongoing state proceedings and the ongoing cease-and-desist order. If the Court were to entertain this claim at this procedural

---

[13] *See* Docket No. 46-6. In her Surreply, Dr. Priester confirmed that this motion was still pending adjudication by the Board. *See* Docket No. 105 at pg. 9 n. 5.

juncture, such action could entail "a ruling in support of an award of money damages [that] 'would embarrass, and could even intrude into, the state proceedings.'" *Bettencourt v. Bd. of Registration in Med. of Com. of Mass.*, 904 F.2d 772, 777 (1st Cir. 1990) (quoting *Guerro v. Mulhearn*, 498 F.2d 1249, 1253 (1st Cir. 1974)).

However, this is not the end of the road for Dr. Priester, for "[w]hen a court orders abstention on a damages claim, it ordinarily may only stay the action, rather than dismiss the action in its entirety." *Rossi*, 489 F.3d at 38 (1st Cir. 2007). Accordingly, the Court will STAY Dr. Priester's claim for money damages pending the resolution of the ongoing administrative proceedings before the Board. Moreover, Dr. Priester is ORDERED to file a status report once the administrative proceedings before the Board conclude.

## IV. CONCLUSION

In view of the above, the claims against the PRDH are hereby **DISMISSED WITHOUT PREJUDICE,** therefore

rendering Dr. Priester's Motion for Preliminary Injunction as

**MOOT.** Further, the claim against Dr. Ramos is **STAYED** and

Dr. Priester is **ORDERED** to file a status report once the

administrative proceedings before the Board conclude.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of August 2022.


S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE