2025 JUL 9 PM 1:10
CLERK'S OFFICE USDC PR
RECEIVED AND FILED

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SALLY PRIESTER, M.D.** | CIVIL No. 22-1035 |
| Plaintiff, | |
| v. | CIVIL RIGHTS |
| | GOVERNMENT DEFAMATION |
| **PUERTO RICO DEPARTMENT OF HEALTH,** | DECLARATORY JUDGMENT |
| **PUERTO RICO COLLEGE OF PHYSICIANS AND SURGEONS,** | JURY TRIAL DEMANDED |
| **VICTOR RAMOS OTERO, ABC RAMOS,** individually, and as representatives of the conjugal partnership constituted among them; | |
| **FREDDIE ROMÁN AVILÉS,** in his individual capacity as former President of the Puerto Rico Medical Licensing Board, his wife **ELBA ORTIZ** individually, and as representatives of the conjugal partnership constituted by them; | |
| **VERÓNICA RODRÍGUEZ DE LA CRUZ,** in her individual capacity as former Secretary of the Puerto Rico Medical Licensing Board, her husband **DEF RODRIGUEZ,** individually, and as representatives of the conjugal partnership constituted by them; | |
| **RAMÓN MÉNDEZ SEXTO, M.D.,** President of the Puerto Rico Medical Licensing Board, in his individual capacity, his wife **GHI MENDEZ,** individually, and as representatives of the conjugal partnership constituted by them; | |

**LUIS MOLINARY FERNÁNDEZ, M.D.,** Vice President of the Puerto Rico Medical Licensing Board, in his individual capacity, his wife **WANDA MOLINARY**, individually, and as representatives of the conjugal partnership constituted among them;

**JOSÉ FUENTES INGUANZÓ**, Secretary of the Puerto Rico Medical Licensing Board, in his individual capacity, his wife **JKL FUENTES**, individually, and as representatives of the conjugal partnership constituted among them;

**JOHN DOE AND RICHARD ROE**, whose names are unknown at this time;

Defendants.

## SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW the Plaintiff, Sally Priester, M.D., *pro se*, and respectfully alleges and prays:

### I. JURISDICTION AND VENUE

1. The Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States of America; the Court's supplemental jurisdiction under 28 U.S.C. § 1332; the Court's authority under Rules 57 and 65 of the Federal Rules of Civil Procedure; the Civil Rights Act, codified in 42 U.S.C. § 1983, and the RICO Act, codified in 18 U.S.C. § 1964 (c).

2. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the District of Puerto Rico.

## II. PARTIES

<u>Plaintiff</u>

3. Plaintiff, Dr. Sally Priester, is a physician-scientist licensed in Puerto Rico with a direct-care private practice in San Juan, Puerto Rico. She is a medical doctor subject to the licensing requirements of the Puerto Rico Department of Health Medical Licensing Board. She is a scientist with more than 20 years of clinical experience in disaster medicine and public health, and ten peer-reviewed abstracts, book chapters, or medical journal manuscript publications. Until the decision in *Delucca Jimenez v. Colegio De Medicos Cirujanos*, 2023 TSPR 119, 213 DPR ___, (2023), she was required required by Puerto Rico law to be a member of the Puerto Rico College of Physicians and Surgeons. P.R. Laws Ann. tit. 20 § 73(g).

<u>Defendants</u>

4. Puerto Rico Department of Health (PRDH) is a unit of the Puerto Rico Government and a person for purposes of 42 U.S.C. § 1983. The Medical Discipline and Licensing Board (Licensing Board), which violated and continues to violate Dr. Priester's constitutional rights under the First, Fifth, Sixth and Fourteenth Amendment of the U. S. Constitution, is ascribed to the Department of Health. Plaintiff is seeking

only injunctive and declaratory relief from PRDH for the unconstitutional proceedings and orders by the Board that have harmed and continue to harm her.

5. Puerto Rico College of Medical Physicians and Surgeons (College), is a legal entity authorize by Act 7-1994, as amended, P.R. Laws Ann. tit. 20 § 73, as a professional organization of physicians who hold a license to practice medicine in the Commonwealth of Puerto Rico.

6. Victor Ramos Otero (Ramos) was, at most times relevant to the claims of this complaint until 2022 the president of the College. Ramos is married to Abc Ramos (unknown name at this time) with whom he has a conjugal partnership. They are sued in their individual capacity and as representatives of their conjugal partnership for monetary damages. Although Ramos currently serves as PRDH secretary, he is being sued in his individual capacity for his illicit conduct prior to becoming an official of the Government of Puerto Rico. Abc is Ramos' wife, and is sued as a representative of the conjugal partnership constituted among them.

7. Freddie Román Avilés (Román) is the former president of the Medical Discipline and Licensing Board (Licensing Board), which is attached to the Department of Health of the Commonwealth of Puerto Rico. Román is married to Elba Ortiz. They are both sued in their individual capacity, as well as representatives of the conjugal partnership constituted among them.

8. Verónica Rodríguez de la Cruz (Rodríguez) is the former secretary of the

Licensing Board. She is married to Def Rodriguez (fictitious name). They are sued in their individual capacity as well as representatives of their conjugal partnership constituted among them.

9. Ramón Méndez Sexto, M.D., (Mendez), is the current President of the Puerto Rico Medical Licensing Board. He is married to Ghi Mendez. They are sued in their in individual capacity, as well as representatives of the conjugal partnership constituted among them.

10. Luis Molinary Fernández, M.D., (Molinary) is the current Vice President of the Puerto Rico Medical Licensing Board, in his individual capacity, his wife Wanda Molinary, individually, and as representatives of the conjugal partnership constituted among them;

11. José Fuentes Inguanzó, (Inguanzó) Secretary of the Puerto Rico Medical Licensing Board, in his individual capacity, his wife Jkl Fuentes, individually, and as representatives of the conjugal partnership constituted among them.

12. Co-defendants John Doe and Richard Roe, whose names are unknown, are individuals that conspired with defendants to deprive Plaintiff of her property and due process rights, and cause her the damages set forth below.

### III. STATEMENT OF FACTS

### HISTORICAL CONTEXT

13. The foregoing allegations are realleged and incorporated herein.

14. The medical profession in Puerto Rico is regulated by the Medical Discipline and Licensing Board, which is attached to defendant Department of Health of the Commonwealth of Puerto Rico (PRDH). P.R. Laws Ann. tit. 20 § 132.

15. On March 13, 2020 former governor of Puerto Rico Wanda Vázquez imposed an island wide lockdown on March 13, 2020 to begin on March 16 resulting from the COVID-19 emergency.

16. Since then, and for a little over nine months thereafter, Plaintiff tapped into her knowledge and experience to publicly and vigorously question lockdowns, mask mandates, and the looming vaccination campaign that would be imposed by Defendant PRDH, including her concern regarding PRDH's use of federal funding awarded to the PRDH to force the underrepresented minority of U. S. citizens in Puerto Rico to receive an early version COVID-19 vaccine under threat of permanent loss of livelihood.

17. On or about November 20, 2020, Plaintiff was invited by Mrs. Cecilia Furlan, founder of the group called "Médicos por la Verdad," Puerto Rico Chapter, to speak at a press conference. There, Plaintiff gave her professional opinion and raised genuine concerns about several issues concerning the government's response and restrictive measures to the COVID-19 virus.

18. On November 29, 2020, Plaintiff was invited to speak again, at an event at Plaza de la Libertad in Condado, Puerto Rico.

19. Given Plaintiff's credibility, knowledge, experience, unselfish commitment,

and courage to tell the public the truth about health matters and specifically COVID-19, Defendants conspired to silence her voice in anticipation of the approval of the experimental injections and subsequent massive vaccination campaign in Puerto Rico.

<h3 style="text-align:center">RAMOS' GOAL OF SILENCING PLAINTIFF</h3>

20. On information or belief, Defendants Ramos, John Doe and Richard Doe had inside information that during the first part of December 2020, President Donald J. Trump would announce that the Food and Drug Administration had approved the Pfizer experimental COVID-19 vaccine and that a massive vaccination campaign would ensue.

21. On information or belief, Defendants John Doe, Richard Doe, and Ramos conspired to silence the only credible, professional, medical voice that would warn the public about the dangers of the MRNA experimental COVID-19 vaccine, threatening the plans of a massive vaccination campaign the population in Puerto Rico.

22. On December 1, 2020, Defendant Victor Ramos, acting under color of state law as the President of the College, with an unlawful desire for profit and with intent to infringe on Plaintiff's right to free speech, freedom of speech and association, property and due process, sent via electronic mail a letter to the Executive Director of the Licensing Board, Ms. Norma Torres Delgado, requesting that a) Plaintiff be investigated for "unethical conduct"; b) that "disciplinary action" be taken against Plaintiff; and c) that a Gag Order preventing Plaintiff from publicly speaking about anything having to

do with COVID-19 be imposed on her. **Exhibit 1.**

23. In support of the complaint letter, Defendant Ramos referenced a newspaper article stating that the group "Physicians for the Truth" asserted that the emergency was an invention, while Ramos condemned their message as "irresponsible" and "dangerous."[1]

24. The real danger was what Ramos and his coconspirators were scheming against Plaintiff and the people of Puerto Rico, all of which has been now corroborated: a massive unopposed vaccination campaign responsible for the untimely deaths of thousands of people in Puerto Rico.

25. In his complaint letter on behalf of the College, Defendant Ramos requested to the Licensing Board, among other things, that a formal investigation be initiated against Plaintiff, that a "disciplinary action" be taken against Plaintiff, and that a Gag Order be issued as soon as the investigation commenced.

26. In support of his contentions, Ramos and his conspirators cherry-picked Plaintiff's statements without placing them in the proper context, requesting that Plaintiff be deprived of her license to practice medicine.

> "...referring to the pandemic as "PLANdemia"; "How dare they make a campaign out of terror and impotence...?"

> "It is a lack of respect, we in the medical community, and for doctors to lend themselves to this kind of thing. Ending this farce..."

---

[1] https://www.elnuevodia.com/noticias/locales/notas/ciudadanos-se-reunen-en-condado-y-cuestionan-la-emergencia-del-COVID-19/

"I don't understand why medical centers such as CDTS [Diagnostic and Treatment Centers] are closed, forcing patients to receive care solely at emergency rooms. It is unbelievable to hear that they cannot contact primary care physicians. Don't let them scare you anymore, because a time will come when the 14 days of incubation will NOT exist, and the Health Department is going to have to in its judgment at some point it is going to have to explain where it has gotten so much data that is not scientifically proven globally."

"We don't have to wait for any vaccine..."

"No child is going to be vaccinated..."

27. Ramos' description mischaracterized Plaintiff's expressions even though it is accurate that she had indeed referred to the pandemic as "Plandemia." This was her way of expressing her opinion that the government had exaggerated the severity of the COVID-19 emergency to profit from the receipt of federal funds, to create fear, and to justify the imposition of severe government restrictions, lockdowns, and mandates upon the population.

28. Ramos' complaint letter also included a link to a Facebook page that does not seem to be available, which Ramos stated, contained a two-hour video of a press conference held on November 20, 2020, where doctors, a psychologist, and lawyers appeared to be criticizing the measures taken by the government in handling the pandemic.

29. Whether or not Ramos, the College, or PRDH agreed with Plaintiff's opinion is beside the point: Plaintiff had a right under the First and Fourteenth Amendments of

the United Sates Constitution and Article II Section 4 of the Puerto Rico Constitution to express her professional opinion on these matters without fear of retaliation by PRDH that could strip her license to practice medicine from her.

30. Time has proven that Plaintiff's public statements that Ramos denounced in his letter were not only true and accurate, but an underestimation of the tragedy that PRDH, Ramos, the College and the current coconspirators perpetrated on the people of Puerto Rico.

**OPEN DISREGARD FOR LAWS, REGULATIONS AND THE CONSTITUTION**

31. Upon sending the December 1, 2020 letter, Ramos violated various College laws and regulations including, but not limited to the following:

a. Violation of Article 4.1(13) of the College's General Regulation (Regulation 8861, hereinafter referred to as "Regulations") and Article 6 of the Puerto Rico Surgeons College Act, P.R. Laws Ann. tit. 20 § 73e, for initiating a complaint process without having received any patient complaints or allegations against Plaintiff about her medical practice or patient care as required by law.

b. Violation of Articles 13.1(6) and Article 13.6(6) of the Regulations by depriving Plaintiff's due process rights including the right to be: notified of the charges; be heard; call witnesses; present documentary evidence and expert testimony; cross-examine the witnesses against them; and be represented by counsel.

c. Violation of Article 13.6(3) of the Regulations that required that after concluding an investigation related to a complaint, the Council had to render a report to the College's Governing Board including factual findings, legal conclusions, and recommendations and <u>that any decision to refer a complaint to the Licensing Board had to be supported by at least five of the voting members</u>. (Emphasis ours).

d. Violation of Article 13.1 (5) of the Regulations that provides that the Council of Ethics and Disciplinary Proceedings of the College (the Council) is the internal directive body of the College in charge of regulating processes for receiving, investigating, and referring complaints concerning ethical violations to the Licensing Board. The complaint letter was only signed by Ramos, without the authorization of the College and without being a member of the Council.

e. Violation of Article 13.2 of the Regulations that provides that a member of another committee or directive body of the College cannot occupy a position in the Council or act on its behalf.

f. Violation of Article 13.5(6) of the Regulations that provided for the Council on Ethics to initiate an investigation *sua sponte* without the need for a referral with the consent of five of its members which Ramos never consulted or obtained.

g. Article 10.3(6) of the Regulations that provides in pertinent part, that when a complaint is filed by the College, it must include a report detailing all the proceedings, the investigation conducted, and the legal conclusions and pertinent recommendations.

32. Most important, Ramos' letter only denounced Plaintiff's protected speech and public expressions on the government's handling of the COVID-19 pandemic and did not entail an actual complaint relating to Plaintiff's professional conduct as a physician.

33. Ramos sent the letter in a hurry and in violation of the College's regulations because Ramos and his coconspirators Doe and Roe needed to silence Plaintiff prior to imminent announcement by President Trump of the FDA approval of the experimental Pfizer COVID-19 "vaccine" that occurred on December 12, 2020.

34. Even though Ramos' actions were not authorized or ratified by the College

pursuant to its legal requirements and were made in violation thereof.

35. Almost three months after Ramos' unauthorized letter to PRDH in violation of the law and the Regulations, on February 24, 2021, he held a meeting with members of the College's Governing Board about the complaint filed against Plaintiff. During the meeting, a member of the Governing Board noted that in the United States there are hundreds of thousands of medical doctors and groups that are protesting government methods in handling the COVID-19 pandemic, including promoting vaccination, which had just recently been put under emergency use authorization by the FDA. That member further added that Plaintiff was not making things up.

36. The organization never retracted Ramos' letter, nor apologized to Plaintiff, causing her irreparable harm.

### FINANCIAL MOTIVATION TO PERSECUTE PLAINTIFF

37. Ramos, the College, and their coconspirators John Doe and Richard Roe needed to silence Plaintiff. The "Coronavirus Aid, Relief, and Economic Security Act" or the "CARES Act" had turned COVID-19 into a lucrative business. Ramos was not going to miss out on the opportunity.

38. Immediately before and after the receipt of Ramos' letter, PRDH agreed to favor Ramos and the College, executing CARES Act-funded contracts with them even though neither met the conditions required for it.

39. Starting in November 2020 and during the months thereafter, Ramos signed

on behalf of the College various contracts to profit from the COVID-19-related federal funding under the CARES Act totaling more than NINE MILLION THIRTY-EIGHT THOUSAND DOLLARS ($9,038,000.00). Article 5.3.2(4) of the College Regulations and specific clauses of each of the contracts prohibited any employee, agent or member of the Governing Board of the Association (such as Ramos) from receiving any financial benefit under those contracts. But Ramos, once again flouting the applicable regulations and contract provisions, illegally appointed himself as Medical Director for the provision of the services under those contracts. Upon information and belief, Ramos illegally received over $150,000 under those contracts. Not surprisingly, this triggered an investigation by the Department of Health and by the Medical Senate of the Association for the use of federal funds under those contracts.

40. These contracts were for COVID-19 testing, telemedicine and vaccination, even though the College did not qualify as "an entity within the Puerto Rico hospital system, including local health clinics (IPA), 330s health centers, state or private universities, Diagnostic and Treatment Centers (CDTs), Municipality, or a 501(c)(3) non-governmental organization (NGO) or coalition capable of providing patient care via telemedicine, including rural communities or other vulnerable groups." (Translation ours).

41. Ramos became obsessed with obliterating Plaintiff for profit.

**GOVERNMENT PERSECUTION AND DEFAMATION OF PLAINTIFF**

42. Despite the egregious violations to the law and regulations surrounding Ramos' December 1 letter, on December 16, 2020 the PRDH Medical Licensing Board headed by Defendants Freddie Román Avilés and Verónica Rodríguez de la Cruz, held a meeting where they voted to proceed with the "non-ethical conduct" investigation of Plaintiff's public expressions regarding the pandemic despite an absence of unethical conduct by her.

43. Triggered by Defendant Ramos' letter, on January 15, 2021, the Executive Director of the Medical Licensing Board summoned Plaintiff to an investigative hearing to be held on February 17, 2021, with the caption case *Colegio de Médicos Cirujanos de Puerto Rico v. Dra. Sally Priester*, Case No. Q-JLDM-2020-270. That is, the complainant appears as filed by the College, not as Victor Ramos. Ramos had publicly boasted about his friendships with Licensing Board Members, Luis Molinary and Verónica Rodriguez.

44. On February 17, at 10:00 am, an initial investigative hearing was held by the Licensing Board's investigative officer. There, codefendant Ramos, other members of the College and members of the Licensing Board, including the Licensing Board's president, Freddie Román, Veronica Rodríguez de la Cruz, and Luis Molinary. **Plaintiff was not invited, in outright violation of her due process rights and agency regulation.**

45. Plaintiff's former attorney filed an appearance and moved to dismiss the investigative proceedings, arguing, among other things, that the Licensing Board lacked jurisdiction to regulate public expressions that are not given in the context of a doctor's

treatment of her patients or other professional performance.

46. Despite this, the hearing proceeded with the testimony of the following "experts" Dr. Lemuel Martínez (infectious disease physician), Dr. Luis Nieves (Pneumologist), and Dr. Carmen Zorrilla (Obstetrician and Gynecologist) who testified about the following:

a. Dr. Martínez testified about the recommendations that government agencies were providing to address COVID-19 and that he recommends the use of face masks to address COVID-19.

b. Devoid of support for his contention, Dr. Nieves falsely declared that 100% of pneumologists agree that there was a crisis, and that he believes that the use of masks is "correct."

c. Dr. Zorrilla talked about the vaccine development, the chronological order of the events related to COVID-19, the existence of COVID-19, and that the CDC recommends the use of masks, which she believed was the best strategy to combat COVID-19.

47. All the "experts" testified about the use of masks and other subjects. Notably, none of the statements attributed to Plaintiff in the Gag Order or in the Formal Complaint had anything to do with masks.

48. The testimonies of all of these "experts" upon which PRDH relied to persecute Plaintiff have been officially debunked as lacking scientific grounds.

49. On February 18, Plaintiff was summoned to appear at a further investigative hearing on March 3 at 10:00 am, which Plaintiff and her then attorney attended, as well as Licensing Board Members Rodríguez de la Cruz and Molinary.

50. Even though Article 10.9 of the Licensing Board's General Regulation (Reg.

8891) mandated that, within 90 days of the conclusion of the investigative process, the Investigating Officer shall prepare and submit a Report to the Licensing Board with findings and recommendations, this did not happen.

51. On April 14, 2021, members of the Licensing Board discussed Plaintiff's case after the investigative phase had concluded.

52. In that discussion, the Investigative Officer—i.e., the officer acting as a quasi-prosecutor—was present, actively participated, and influenced the decision of the Licensing Board to issue the Gag Order against Plaintiff and to recommend a formal disciplinary proceeding. Neither Plaintiff nor her attorney were invited, in violation of the mandate that "[i]n the exercise of its power, investigative and adjudicative functions shall be separated to ensure justice, and the Board shall have to act consistently in the application of disciplinary sanctions." P.R. Laws Ann. tit. 20 § 134b.

53. The proceedings before PRDH Licensing Board resembled a spectacle out of a kangaroo court devoid of the most basic due process guarantees. For example:

a. Member Dr. Carlos Portocarrero Blanco said that because Plaintiff is a licensed physician, her freedom of speech is irrelevant, and therefore, if at any point she intends to question the establishment publicly, she must submit proof to partake in such challenge. Otherwise, Dr. Portocarrero said, she should not be allowed to challenge the establishment.

b. Dr. Luis Molinary first pointed out that during the investigative process she was told that the Association had brought some expert witnesses and that, although she was told that she could bring her own expert witnesses, she never brought any of them in the investigative phase. Of course, Plaintiff was never provided with any information concerning the testimony of the Association's expert witnesses. So, despite the Licensing

Board putting the burden upon her to submit expert proof, she was never made aware of the expert testimony that she was being required to rebut. Later, Dr. Molinary said that he wanted to make clear that while a physician has freedom of speech, a medical doctor cannot speak against the recommendations of the CDC, FDA, and accrediting colleges during a pandemic.

c. Defendant Román complained for the record about a false incident that did not happen accusing Plaintiff to hold a rally in front of the Licensing Board's offices demanding freedom of speech from the Licensing Board even though she had not placed foot anywhere near the building for almost three years.

d. Dr. Molinary said that Dr. Priester had not submitted any evidence to show that she was capable of making public expressions about COVID-19.

e. Dr. Jorge J. Zequeira opined that because she is a licensed physician, she must face the consequences of providing opinions contrary to the standards of care promulgated by the FDA, AMA, infectious disease experts, the CDC, and the whole world.

f. Román and de la Cruz swayed the vote of the board against Plaintiff by falsely asserting, respectively, that since Plaintiff had been unsuccessful in her initial attempt to challenge the investigative proceedings and was not able to demonstrate that she had knowledge on how to manage COVID-19, and that she could not demonstrate that she did not violate the Code of Ethics.

54. That same day, the participating members of the Licensing Board voted in favor of initiating a formal complaint proceeding against Plaintiff, and issued an overly broad and unconstitutional Cease and Desist Order (Gag Order) precluding her from expressing her opinion regarding the Government's handling of COVID 19 and future variants of the virus

55. Plaintiff was never given the opportunity to confront the evidence or alleged witnesses that the College presented in the investigative phase. Indeed, she was never

made aware of the evidence presented against her before the Licensing Board issued the

Gag Order.

56. The First Gag Order (Resolution 2021-04) provided as follows:

Dr. Sally Morales Sepúlveda, also known as Dr. Sally Priester, is ordered to CEASE AND DESIST from making, expressing, communicating, disseminating, publishing, supporting, sharing and/or endorsing, by any means of communication or in person, messages without any legitimate scientific basis against the health efforts being carried out by government or private authorities recognized and respected by the scientific and medical community to alert and protect the society with respect to the spread and propagation of the SARS-CoV-2 virus, the Coronavirus Pandemic and/or Covid-19, as well as any of its variants.

IT IS HEREBY NOTIFIED that this Resolution and Order will enter into force upon service hereof on Dr. Sally Morales Sepúlveda, also known as Dr. Sally Priester, at her mailing and email addresses on record with the Board, and on her legal representative, Humberto Cobo Estrella, Esq., and it will remain in force until otherwise determined by the Board.

Failure to comply with this Order may entail severe monetary and disciplinary penalties and/or even judicial contempt, Art. 28 (g) Law 139, *supra*. So resolved by the Puerto Rico Board of Medical Licensure and Discipline, in its regular meeting on April 14, 2021. (ECF No. 1 at 28-29.)

57. Any violation of the Gag Order entailed the probability of additional

sanctions, including but not limited to, monetary fines up to $5,000, the suspension or

cancellation of Plaintiff's license to practice medicine in Puerto Rico, and judicial

contempt. Defendants had effectively silenced Plaintiff, obliterating her First

Amendment rights.

58. Neither the investigative officer nor the Licensing Board conducted an

independent investigation before issuing the Gag Order against Plaintiff and

recommending the filing of a Formal Complaint against her. Indeed, both the Gag Order and the Formal Complaint exactly copied Plaintiff's expressions as contained in Ramos' original complaint letter.

59. It did not end there. Silencing Plaintiff was not sufficient guarantee to protect Ramos' and the College's economic interests and intent to destroy Plaintiff.

60. On information and belief, Ramos, John Doe and Richard Roe continued orchestrating the persecution against Plaintiff behind the scenes through myriad electronic, text, and phone communications.

61. In furtherance of the collusion among Ramos, Román, de la Cruz, John Doe and Richard Roe, on August 12, 2021, the Investigative Officer, on behalf of the Licensing Board, filed a formal complaint captioned *Junta de Licenciamiento y Disciplina Médica de Puerto Rico v. Dra. Sally Morales Sepulveda*, Case No. JLDM- 2020-270 (Formal Complaint), which charged Plaintiff with violating canons 29. 31, 32, 33 and 38 of the Code of Ethics of the medical profession.

62. For years, PRDH sat on the new complaint in violation of its obligation to adjudicate matters within ninety days.

## SECOND GAG ORDER

63. Devoid of notice, hearing or opportunity to be heard, on July 10, 2024, the new PRDH board including Defendants Méndez, Molinary, and Fuentes colluded to enter a new, all-encompassing, permanent and unconstitutional Gag Order against

Plaintiff, Resolution number 2024-22. (Exhibit 2)

64. In this new Gag Order dismissing the previous failing to conclude that Plaintiff had not violated any canon of ethics, PRDH instituted an even more illegal one in its place that provides as follows:

> "In spite of that, the Board understands and forewarns Dr. Sally Priester that should there be any national crisis or emergency arising in the future from the COVID-19 pandemic, she should abide by the safety measures that the organizations in charge of healthcare should then recommend and adopt for the benefit of the citizenship as a whole. Thus, the Board does hereby grant approval to the parties' petition, thus ordaining the dismissal, closure and archive of these administrative proceedings." **Exhibit 2**.

65. In this new overboard, permanent, and unconstitutionally Gag Order crafted pursuant to the directives of PRDH, Ramos, John Doe and Richard Roe, Defendants Méndez, Molinary, and Fuentes acknowledged that the previous order was effective in silencing Plaintiff.

66. This Court denied Plaintiff's request for preliminary injunction to protect her constitutional rights. In so doing, it enable defendants PRDH to insist on forever holding hostage under color of state law her constitutional rights protected under the First, Fifth, Sixth, and Fourteenth Amendments of the U. S. Constitution.

67. Defendants/coconspirators Román and Rodriguez acting under color of state law, illegally ran with the original frivolous complaint at the behest of Ramos and the College to silence Plaintiff for their benefit as well as that of John Doe, and Richard Roe. Now defendants Méndez, Molinary, and Fuentes, acting under color of state law,

colluded to continue holding hostage Plaintiff's First and Fourteenth Amendment rights.

## GOVERNMENT SLANDER, DEFAMATION

68. Acting under color of Puerto Rico law and in retaliation for Plaintiff's expressions regarding the Covid-19 pandemic, Victor Ramos individually, and in concert with members of the Licensing Board, deprived Plaintiff's right to free speech, has harmed her reputation and business, and has caused her monetary loss. In an effort to further intimidate Plaintiff from engaging in public discourse, humiliate and inflict emotional distress upon her, on April 22, 2021, Defendants Rodriguez and de la Cruz, notified the First Gag Order to the following entities not party top the case: (i) Puerto Rico Hospital College; (ii) the Office of the Insurance Commissioner of Puerto Rico; (iii) the U.S. Drug Enforcement Administration (DEA); (iv) Auxiliary Office for Regulation and Accreditation of Health Facilities (SARAFS); (v) SIMED; (vi) Triple-S Propiedad; (vii) Patients Ombudsman's Office; (viii) the Credential and Privileging Coordinator at the Department of Veteran Affairs; (ix) Triple-S Salud; (x) Mental Health and Addiction Services Administration (ASSMCA); (xi) Puerto Rico Medical Defense Insurance Company; (xii) the National Practitioner Data Bank (xiii) and the Puerto Rico Surgeons College.

69. Due to the abusive process and Gag Order that Plaintiff was subjected to, on June 2021 she was forced to close down her office at the Ashford Medical Center that

she had maintained since 2014, sustaining the loss of her medical practice, goodwill, and future earnings estimated in an amount to be determined by the jury.

70. Defendant's slander, media manipulation and propaganda against Plaintiff fostered public animosity and even a violent animus against her, the publication of dozens of slanderous and misleading articles, harming her reputation and even causing her to feel afraid for her life.

71. An examples of the public attacks Plaintiff suffered as a result of Defendants' coordinated efforts such as the following:



"She continues with the misinformation campaign and now is making campaigns to sign medical certificated for those that do not want to get vaccinated.

(Translation ours)

72. Defendants' relentless, irresponsible, and malicious propaganda against

Plaintiff fed through the members of the press, coupled with the government weaponization resulting from her illegal classification as a domestic extremist, Plaintiff became a victim of organized stalking by people that would aggressively scream at her when walking down the street insults such as: "Murderer!"

73. All this abuse was a direct cause of the government weaponization, misinformation and statements that codefendants acting under color of state law fed to the members of the press and the FBI regarding Plaintiff.

74. On July 10, 2024, defendants Mendez, Molinary, and Fuentes notified via email to Plaintiff's former attorney its Resolution 24-22, including a notification to the same parties enumerated in paragraph 65 above, perpetrating further reputational harm to Plaintiff.

75. The publication of both PRDH Gag Orders by notifying it to third parties not only undermined Plaintiff's reputation and professional character as a physician, but also created an enduring chilling and deterring effect for her and for other physicians to express opinions contrary to the Government of Puerto Rico's restrictions on civil liberties in violation of her due process and freedom of speech rights.

76. Defendants' joint conduct stigmatizing Plaintiff as a science denier and agent of disinformation resulted in her improper nomination and classification by the Federal Bureau of Investigation (FBI) as a "Domestic Violent Extremist" pursuant to the Biden Administration's December 13, 2021 "DVES and Foreign Analogues May React

Violently to COVID-19 Mitigation Mandates." (Exhibit 3).

77. This classification is a means of government weaponization against law-abiding citizens such as Plaintiff, who has been victimized and slandered by this false government label promulgated by Ramos, the College, and PRHD operatives and consequently included in the Terrorist Screening Database that is distributed throughout the nation to over 18,000 law enforcement, 1,200 organizations and over 600 corporations and 60 countries. As a result of this improper classification of Plaintiff as a "DVE," she has been discriminated against in all branches of government, and has been subjected to illegal surveillance in violation of the Fifth, Sixth, Fourth and Fourteenth Amendment of the United States Constitution.

**SCIENCE PROVED PLAINTIFF RIGHT/DEFENDANTS' CLAIMS UNFOUNDED**

78. Time has proven Plaintiff right. All the "science" that defendants authoritatively fed the people of Puerto Rico and used to silence, prosecute, discredit, slander and destroy Plaintiff have been categorically proven wrong.

79. Plaintiff specifically requests that this Court take judicial notice of the following facts contained in the House of Representatives House of Representative's Select Subcommittee on the Coronavirus report titled: "After Action Review of the COVID-19 Pandemic: The Lessons Learned and a Path Forward released on December 2, 2024. report that prove the baseless persecution of Plaintiff by Defendants:

a. The incubation periods[2] were found to not have been based on science and consequently eliminated.

b. On June 25, 2025 the FDA expanded existing warning on the Pfizer and Moderna Vaccines about the risk of myocarditis (hart inflammation) as 8 cases per 1 million people who got the 2023-2024 COVID shots between the ages of 6 months and 64 years old.[3]

c. The public developed mistrust in the public health officials' handling of the pandemic due to their failed tactics.[4]

d. The six-foot social distancing requirement was not supported by science.[5]

e. The Constitution cannot be suspended in times of crisis and restrictions on freedoms sow distrust in public health.[6]

f. Masks and Mask Mandates Were Ineffective at Controlling the Spread of COVID-19.[7]

g. Public Health Officials Flip Flopping on the Efficacy and Use of Face Masks Without Full Scientific Transparency Caused Mistrust

---

[2] https://www.weau.com/2021/05/19/cdc-removes-14-day-wait-time-between-COVID-19-vaccine-and-other-vaccines/

[3] https://apnews.com/article/covid-vaccines-heart-myocarditis-warning-07103a53236cb715400aac0608e27dab

[4] See page 317 of December 2, 2024, the House of Representative's Select Subcommittee on the Coronavirus pandemic issued a 557-page report titled: "After Action Review of the COVID-19 Pandemic: The Lessons Learned and a Path Forward" found in https://oversight.house.gov/wp-content/uploads/2024/12/2024.12.04-SSCP-FINAL-REPORT-ANS.pdf

[5] *Id.* 198.

[6] Id., p. 296.

[7] Id. p. 203

in Public Health Establishments.[8]

h. The Biden Administration exceeded its authority by mandating masks.[9]

i. The U.S. Centers for Disease Control and Prevention relied on flawed studies to support the issuance of mask mandates.[10]

j. Forcibly masking young children, ages two and older, caused more harm than good.[11]

k. Unscientific COVID-19 lockdowns caused more harm than good.[12]

l. Enduring COVID-19 lockdowns unnecessarily damaged American's mental health.[13]

m. Enduring COVID-19 lockdowns disrupted the development of American children and young adults.[14]

n. Enduring COVID-19 lockdowns unnecessarily had severe consequences for Americans' physical health.[15]

o. The Biden Administration and many public health officials exaggerated the power of COVID-19 vaccines.[16]

---

[8] Id., p. 204.

[9] Id. p. 206.

[10] Id., p. 207.

[11] Id., p. 212.

[12] Id., p. 214.

[13] Id. p. 215.

[14] Id., p. 216.

[15] Id. p. 218.

[16] Id., p. 296.

p.   Vaccine mandates were not supported by science and caused more harm than good.[17]

q.   The Biden Administration accelerated the approval of Pfizer's Biologics Approval Application to impose vaccine mandates.[18]

r.   There was a coordinated effort from public health officials to ignore natural immunity and suppress dissenting opinions.[19]

s.   Vaccine mandates were not supported by science and caused more harm than good.[20]

t.   The Vaccine Adverse Event Reporting system is insufficient and not transparent.[21]

u.   Pandemic-era policy often disregarded or outright violated the sanctity of the doctor-patient relationship.[22]

v.   Executive Order 14155: The United States withdrew from the World Health Organization and its pandemic mandates that are not based on science.

80. All of the aforementioned are uncontroverted facts that prove that the complaints pushed by Ramos, the College, PRDH and the rest of the Defendants were based on false premises, subjecting Plaintiff to unconstitutional harm and substantial

---

[17] Id. p. 336.

[18] Id. p. 322.

[19] Id., p. 332.

[20] Id., p. 336.

[21] Id., p. 349.

[22] Id., p. 367.

mental pain and suffering.

81. Furthermore, since November, 2020 an external peer review article corroborated that the PCR tests were unreliable and not recommended.[23] These tests were responsible for millions of misdiagnoses of COVID-19.

82. That article concluded that the COVID-19 virus has never been isolated, so no one can assert it actually exists. "Validation was only done in regards to in silico (theoretical) sequences and within the laboratory-setting, and not as required for in-vitro diagnostics with isolated genomic viral RNA.[24] It was a true fact that the COVID-19 virus did not exist.[25]

83. A 2023 peer-reviewed study concluded that mandatory vaccine policies have had damaging effects on public trust, vaccine confidence, political polarization, human rights, inequities and social wellbeing. We question the effectiveness and consequences of coercive vaccination policy in pandemic response and urge the public health community and policymakers to return to non-discriminatory, trust-based public health approaches.[26]

---

[23] https://zenodo.org/records/4298004

[24] Id at page 279.

[25] https://archive.ph/Fkvgq (Last accessed July 7, 2025.);
https://principia-scientific.com/exposing-the-COVID-19-sars-cov-2-isolate-fraud/

[26] Kevin Bardosh, et al., The unintended consequences of COVID-19 vaccine policy: why mandates, passports and restrictions may cause more harm than good, BMJ GLOBAL HEALTH (May 2023)

84. Finally, the largest COVID-19 "vaccine" safety study ever conducted, involving 99 million individuals, confirmed that the COVID-19 injections are not safe for human use as they caused:

a. 510% increased risk of myocarditis following mRNA platform injection.

b. 278% increased risk of acute disseminated encephalomyelitis (ADEM) following mRNA injection.

c. 223% increased risk of cerebral venous sinus thrombosis (CVST) following viral-vector injection.

d. 149% increased risk of Guillain-Barré syndrome (GBS) following viral-vector injection. Multi-country analysis confirmed pre-established safety signals for myocarditis, pericarditis, Guillain-Barré syndrome, and cerebral venous sinus thrombosis.[27]

## DEFENDANTS' HANDS ARE SOAKED IN THE BLOOD OF THOSE THAT WERE NOT ALLOWED TO LISTEN TO PLAINTIFF AND QUESTION THEM

85. The April 22, 2021 GAG order has created a chilling effect not only against Plaintiff, but also among other medical doctors in Puerto Rico.

86. Victor Ramos and the Licensing Board intentionally disregarded Plaintiff's due process and free speech rights to advance their own beliefs, policies, ideologies, and financial interests (at least in the case of Ramos), and to prohibit Plaintiff from criticizing the Government of Puerto Rico in the handling of the COVID-19 pandemic.

87. The complaint letter sent by Defendant Ramos, PRDH's original and second

---

[27] COVID-19 vaccines and adverse events of special interest: A multinational Global Vaccine Data Network (GVDN) cohort study of 99 million vaccinated individuals, https://pubmed.ncbi.nlm.nih.gov/38350768/

gag orders, and the licensing board Formal Complaint procedure constituted retaliation for Plaintiff engaging in protected speech.

88. Defendants, through the July 10, 2024 Gag Order, are imposing a prior restraint on Plaintiff's protected speech. Further, the GAG Order restricts her ability to speak her ideas and beliefs about matters of public concern and her professional speech.

89. Any violation to the new Gag Order can be arbitrarily prosecuted by PRDH whose current Secretary is Defendant Ramos that has a history of entails the probability of additional sanctions, including but not limited to, monetary fines up to $5,000, the suspension or cancellation of Plaintiff's license to practice medicine in Puerto Rico, and judicial contempt.

## IV. CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

90. The foregoing allegations are realleged and incorporated herein.

91. Speech on public issues occupies the "highest rung of the hierarchy of First Amendment values and is entitled to special protection." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982).

92. Plaintiff has a right to free speech under the First and Fourteenth Amendments of the Constitution of the United States. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered irreparable harm, including potetnial loss of her constitutional rights.

93. Plaintiff is not a terrorist, and her name does not belong in any Terrorist

Screening Database where she must have been placed as a result of the Biden Era's policies to classify as "Violent Domestic Extremists" anyone that opposed the government narrative on the management of the COVID-19 emergency.

94. Pursuant to the Declaratory Judgment Act, 28 USC §§ 2201-2202, F.R.Civ.Proc. 57, Plaintiffs request that this Court enter Declaratory Judgment and declare that in light of the evidence that has surfaced to corroborate the validity of Plaintiff's public expressions, this Court DECLARE the following:

a) That the December 1st complaint letter (Exhibit 1) and illicit procedure that ensued that culminated in Plaintiff's prior restraint and obliteration her right to free speech perpetrated by Defendants Ramos, the College, John Doe, Richard Roe, Román, and de la Cruz and culminating in Resolution 2021-04 was repugnant to the First, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

b) That Resolution 2024-22 promulgated by Defendants Ramos, the College, John Doe, Richard Roe, Mendez, Molinary, and Fuentes constitutes an illegal prior restraint and obliteration Plaintiff's constitutional rights protected under the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

c) That the FBI's designation of Plaintiff as a violent domestic extremist at the behest of any or all defendants without notice or due process is repugnant to the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution and constitutes government weaponization in violation of Executive Order 14147 to end the

Weaponization of the Federal Government.

**SECOND CAUSE OF ACTION: 42 U.S.C. § 1983**

95. The foregoing allegations are realleged and incorporated herein.

96. Ramos' and the College's <u>continuous and uninterrupted</u> false and negligent claims against Plaintiff contained in the December 1st letter that turned out to be unsupported by served the purpose of depriving Plaintiff of her rights under color of state law in violation of the First, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

97. The continuous and untinterrupted collusion among Ramos, the College, John Doe, Richard Roe, Mendez, Molinary, Fuentes and de la Cruzthat persists to this day to persecute, silence, and deprive Plaintiff of her medical license, due process and free speech under false premises constitutes a deprivation of her civil rights under color of state law in violation of the First, Fifth, Sixth, and Fourteenth Amendment of the U.S. Constitution for which all defendants jointly and severally are liable to Plaintiff.

98. Given the fact that the defendants jointly and severally continued, despite the filing of the initial complaint, to insist that Plaintiff's protected speech was prohibited under false scientific premises, and that her capacity to freely speak about matters of utmost public concern such as public health was banned more than four years and a half, Plaintiff sustained and continues to sustain irreparable harm under the First and Fourteenth Amendment.

99. Since defendants to date have not retracted nor repudiated the latest overreaching, unconstitutional, legal threat they made against Plaintiff, the threat further governmental retaliation in the form of fines, civil contempt, and revocation of her license to practice medicine if she exerts her right to freely speak about matters of public health has never ceased since December 1st, 2020.. This prior restraint is a concrete harm susceptible to compensation by this Court.

100. Plaintiff prays that the Court order Defendants and their respective conjugal partnerships to jointly pay her a reasonable amount of damages pursuant to the Civil Rights Act, 42 U.S.C. § 1983 for the deprivation of her constitutionally-protected rights as set forrth above.

## THIRD CAUSE OF ACTION: GOVERNMENT DEFAMATION

101. The foregoing allegations are realleged and incorporated herein.

102. Defendants concerted actions under color of state law to slander Plaintiff as a purveyor of misinformation and designating her as a Violent Domestic Extremist and making a mockery of her First Amendment directly harmed her reputation and placed her in constant fear of being attacked by a stranger believing Defendants' narrative, forcing her to close her medical office at the Ashford Presbyterian Center.

103. Plaintiff had to close down her office because of the aggressive behavior that strangers displayed against her because of the propaganda and misinformation fed by defendants to media outlets.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court GRANT this complaint in all of its parts and consequently:

a) Enter Declaratory Judgment declaring Resolution 2024-22 unconstitutional and unenforceable.

b) Enter Declaratory Judgment declaring that Resolution 2021-04 violated Plaintiff's First, Fifth, Sixth, and Fourteenth Amendments.

c) Declare that Plaintiff's professional speech on matters of public conern is protected by the First Amendment.

d) Hold all defendants jointly and severally liable for the irreparable harm and damages that their actions under color of state law have caused and continue to cause Plaintiff.

e) Permanently enjoin co-defendants from continuing to use the color of state law to deprive Plaintiff of her constitutional and legal rights as outlined above.

f) Order Defendant to withdraw Plaintiff's nomination to the FBI as a Domestig Extremist and Order the FBI to remove her from the Terrorist Screening Database.

g) Hold defendants jointly and severally responsible for the payment of compensatory damages in an amount of no less than $1,000,000 in favor of Plainitff.

h) Award Plaintiff attorney's fees and costs accrued until July 10, 2024 pursuant to 42 U.S.C. § 1988.

i) Grant such other and further relief as the Court deems just and proper and

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

I CERTIFY: That on July 9, 2025 I filed in person this motion at the Office of the

Clerk of the United States District Court for the District of Puerto Rico that notifies all

attorneys of record by means of the Court's CM/ECF platform.

Dated: July 9, 2025.

_____

**Sally Priester, M.D.**
PO Box 16106
San Juan, PR 00908
Tel. (305)746-3073
email: sallypriester@gmail.com